IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JASON MICHAEL CONTRERAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:13cv772 (JCC) |
| ) | |
| KEITH W. DAVIS, ) | |
| ) | |
| Respondent. ) | |

**M E M O R A N D U M   O P I N I O N**

Petitioner Jason Michael Contreras ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet. [Dkt. 1] at 1-4.) Petitioner's state custody arises from a 1997 judgment of conviction entered in Norfolk Circuit Court, following his guilty plea, on charges of first degree murder, robbery, use of a firearm in the commission of a felony, and attempted robbery. (Pet. at 4.) Respondent has filed a Motion to Dismiss and Rule 5 Answer, with a supporting brief. [Dkts. 5-7.] Despite ample time, Petitioner has not filed a reply. For the reasons that follow, the petition will be dismissed.

## I. Background

The state charges against Petitioner stem from his involvement in a botched carjacking that resulted in the death of David Semko. (Pet. at 13-14.) It is undisputed that Petitioner fatally shot Semko as he was walking to his vehicle. (Pet. at 13.)

On or about October 30, 1996, Petitioner was arrested and charged with capital murder, robbery, and several related offenses. (Pet. at 13-14.) Although only fifteen years old at the time of his arrest, Petitioner was certified and charged as an adult. (Pet. at 14.) Capital murder then carried a mandatory life sentence.[1] (Pet. at 15.)

On March 27, 1997, Petitioner pled guilty to first degree murder along with the aforementioned charges. (Pet. at 4.) According to Petitioner, he took this plea deal to avoid the life sentence associated with a capital murder conviction. (Pet. at 15.)

On May 20, 1997, the court sentenced Petitioner to seventy-seven years in prison. (Pet. at 4.) Petitioner did not file a direct appeal. (Pet. at 4.) Nevertheless, on June 10, 1999, Petitioner filed a *pro se* motion for habeas relief in the

---

[1] Respondent submits that capital murder did not carry a mandatory life sentence at the time of Petitioner's conviction. (Resp't Br. in Supp. of Mot. to Dismiss at 20-21.) This is simply incorrect. *See Yarbrough v. Commonwealth*, 258 Va. 347, 366-69 (1999). Accordingly, the Court will not address any of Respondent's arguments based on this contention.

2

Norfolk Circuit Court. (Pet. at 4.) Following a hearing, the court dismissed the motion. (Pet. at 4.) Petitioner's case remained dormant until he filed the instant petition.

In the habeas petition currently before the Court, Petitioner alleges that his guilty plea is invalid because it was induced by the prosecutor's threat of a now unconstitutional sentence: mandatory life without parole for a capital murder charge. Petitioner's argument rests upon the recent Supreme Court case *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), in which the Court held that mandatory life sentences for juveniles are unconstitutional. (Pet. at 3.) Applying *Miller* retroactively, petitioner asks the Court to "discharge[] [him] from his unconstitutional confinement and restraint and/or relieve[] [him] from his unconstitutional sentence." (Pet. at 32.)

Respondent has moved to dismiss the petition on grounds that it is time-barred, the claims are unexhausted, and finally the arguments are without merit. (Resp't Br. at 3, 5, 17.)

## II. Analysis

There are several problems with the pending petition, the most glaring of which is its timeliness. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state prisoners have a one-year period within which they must

3

seek federal habeas review. 28 U.S.C. § 2244(d)(1). Ordinarily, this limitation period begins to run from the date on which the state court judgment becomes final. *See Gonzalez v. Thaler,* \_\_ U.S. \_\_, 132 S. Ct. 641, 652-53 (2012). However, in some circumstances, AEPDA expressly permits accrual of the limitations period from a later date. *See* 28 U.S.C. § 2244(d)(1). Pertinent here, AEDPA allows for a belated commencement of the limitation period when the Supreme Court recognizes a new constitutional right. In that case, the limitations period runs from the "date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

Here, Petitioner's habeas claims are facially time-barred. The window to bring a federal challenge to his 1997 conviction expired sometime in 1998 after he opted not to seek direct review. *See Gonzalez*, 132 S. Ct. at 653. Consequently, the current petition, filed in 2013, is precluded unless Petitioner can demonstrate a belated commencement of the limitations period. *See* 28 U.S.C. §§ 2244(d)(1)(B)-(D).

Recognizing this impediment, Petitioner appears to argue that he is entitled to a later accrual date based on the Supreme Court's decision in *Miller*. (Pet. at 4.) Petitioner

4

maintains that the new rule set forth in *Miller* is retroactive to his case and sufficient to qualify for a belated commencement under § 2244(d)(1)(C). (Pet. at 4.) As explained below, however, the Court is unpersuaded by this position.

First, Petitioner cannot avail himself of a later accrual date on account of *Miller* because, on its face, *Miller* has no bearing on his case. The crux of Petitioner's claim is that his guilty plea is flawed because the prosecution threatened to pursue a mandatory life sentence, a punishment that is now unconstitutional for juvenile offenders such as Petitioner. (Pet. at 3.) In *Miller*, however, the Supreme Court ruled "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. *Miller* did not address the legitimacy of a guilty plea executed on the threat of such a sentence. In essence, Petitioner asks the Court to read into *Miller* a rule that any guilty plea executed on the threat of a lawful sentence later held unconstitutional is itself invalid. There is nothing in *Miller* to suggest this expanded reading, and the Court declines Petitioner's invitation to create such a rule now. Indeed, this position would violate well-established precedent. *See Brady v. United States*, 397 U.S. 742, 756 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does

5

not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *Hudgins v. Cartledge*, C.A. No. 5:10-3282-JFA-KDW, 2012 WL 761673, at *4 (D.S.C. Mar. 8, 2012) (holding that a guilty plea to murder which resulted in a life sentence was not involuntary where the prosecutor had threatened a juvenile with a death sentence, the kind of sentence that was later found unconstitutional under *Roper v. Simmons*, 543 U.S. 551 (2005)). Given the issue as framed by Petitioner, it is apparent that the *Miller* ruling did not recognize a right that could potentially lead to relief in this case.

Moreover, since Petitioner received a sentence of seventy-seven years, the ruling in *Miller*, as properly interpreted, is inapplicable. As remarked above, *Miller* pertains only to juveniles sentenced to life without the possibility of parole. *See Friedlander v. United States*, No. 13-70918, 2013 WL 5614774, at *1 (9th Cir. Oct. 8, 2013) ("*Miller* is inapplicable because [defendant] was not sentenced to life without parole.").

Nevertheless, even interpreting *Miller* as Petitioner suggests, it does not offer relief from the statute of limitations. This Court is persuaded that the new rule announced in *Miller* is not retroactively applicable to cases on

6

collateral review. As such, Petitioner cannot claim the benefit of *Miller*, either in its substance or to make his action timely.

To fall under the statute of limitations exception Petitioner relies upon, § 2244(d)(1)(C), it must be shown that (a) the Supreme Court has recognized a new constitutional right, and (b) the Supreme Court made this right retroactive to cases on collateral review. *Id.* While *Miller* undoubtedly created a new rule as prescribed in this section, *see Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan. 4, 2013), retroactivity is absent.

Under long-settled precedent, "the integrity of judicial review requires that [the Court] apply [newly decided constitutional rules] to all similar cases pending on direct review." *Griffith v. Kentucky,* 479 U.S. 314, 323 (1987). By contrast, new constitutional rules are not applicable to those cases which have become final unless they fall within one of two familiar exceptions set forth in *Teague v. Lane,* 489 U.S. 288 (1989). The first exception applies to rules prohibiting certain primary conduct or prohibiting a certain category of punishment for a class of defendants because of their status or offense. *See Beard v. Banks,* 542 U.S. 406, 416 (2004). These rules are deemed "substantive" and generally apply retroactively on collateral review. *Id.* The vast majority of courts to address this issue have found that the rule set forth in *Miller*

7

does not fall under this rubric, and we agree with their analysis. *See, e.g., Johnson v. Ponton*, Civil Action No. 3:13-CV-404, 2013 WL 5663068, at *5 (E.D. Va. Oct. 16, 2013). Indeed, the Supreme Court's language indicates that it intended the *Miller* rule to be procedural, rather than substantive. *See Miller*, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty."). Such a holding falls outside the first exception to *Teague*. *See Schriro v. Summerlin,* 542 U.S. 348, 354 (2004).

The second *Teague* exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" or "implicit in the concept of ordered liberty." *Beard,* 542 U.S. at 417. "In providing guidance as to what might fall within this exception, [the Court has] repeatedly referred to the rule of *Gideon v. Wainwright*, . . . and only to this rule." *Beard,* 542 U.S. at 417 (citations omitted). The Court further noted that "it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Id.* Although the rule handed down in *Miller* plays an important role in our

8

jurisprudence, it is far from the "watershed" rule set forth in *Gideon*. Indeed, the rule in *Miller* "is an outgrowth of the Court's prior decisions that pertain to individualized-sentencing determinations. [Thus, it] does not qualify as a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Craig*, 2013 WL 69128, at *2 (citations and internal quotation marks omitted).

Given the *Miller* rule does not qualify under either *Teague* exception, it is not retroactively applicable to cases on collateral review. Consequently, Petitioner cannot claim the substantive benefit of *Miller* or use the case as grounds to claim this action is timely. Petitioner has not alleged any other plausible basis for tolling the limitations period. Accordingly, the petition is time-barred from federal consideration and will be dismissed. Respondent's alternate arguments regarding procedural default and the merits of Petitioner's claims consequently need not be addressed.[2]

---

[2] It is worth noting that the petition would also fail under Respondent's alternate arguments. First, Petitioner's claims are clearly unexhausted because he never presented them in any state proceeding. More importantly, his position is meritless. It is well-settled that a subsequent change in the available punishments for a charged crime, standing alone, does not render a prior guilty plea involuntary. *See Hudgins*, 2012 WL 761673, at *4 (holding that a guilty plea was not involuntary where the prosecutor had threatened a juvenile with a death sentence, the kind of punishment that was later found unconstitutional).

### III. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss will be granted and the petition will be dismissed with prejudice. An appropriate Order will issue.

|  |  |
|---|---|
| December 11, 2013 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |