IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JASON MICHAEL CONTRERAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13cv772 (JCC) |
| | ) | |
| KEITH W. DAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

**M E M O R A N D U M   O P I N I O N**

Petitioner Jason Michael Contreras ("Petitioner" or "Contreras") originally filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court on June 25, 2013. [Dkt. 1.] In the petition, Contreras alleges that he is being held in state custody in violation of his federal constitutional rights, based on *Miller v. Alabama*, 132 S. Ct. 2455 (2012). Pet. at 3-4.

Petitioner's state custody arises from a 1997 judgment of conviction entered in Norfolk Circuit Court, following Petitioner's guilty plea, on charges of first degree murder, robbery, use of a firearm in the commission of a felony, and attempted robbery. Pet. at 4. This Court previously denied Petitioner's request for a writ, based primarily on its untimeliness. [Dkt. 8.] The petition is now back before the Court on remand, with instructions to reconsider this Court's prior ruling in light of *Montgomery v. Louisiana*, 136 S. Ct.

1

718 (2016). For the reasons that follow, the petition will be granted.

## I. Background

Petitioner's state charges stem from his involvement in a botched carjacking that resulted in the death of David Semko ("Semko"). Pet. at 13-14. Prior to the night in question, Petitioner's childhood had been filled with traumatic events, including a pattern of abuse and neglect, his mother's drug addiction, an absentee father, several stints in foster care, and consistently unstable housing. *Id.* at 6-13. In fact, several weeks before the offense occurred, Contreras's mother had moved him into a crack house and then abandoned him, asking her drug dealers to supervise him. *Id.* at 12. The drug dealers interpreted this request as giving them permission to use Petitioner to help them commit crimes. *Id.*

On the night of October 26, 1996, one of the drug dealers made Contreras and another minor flip a coin to decide who would have to commit a robbery. Pet. at 13. Petitioner lost, so the drug dealer handed him a gun. *Id.* At that moment, Semko happened to be walking to his car. *Id.* Petitioner approached Semko, who ran. *Id.* In order to prove to the drug dealer that Contreras had tried to rob Semko, Petitioner fired a single shot "in[to] the pitch blackness" in Semko's direction. Declaration of Jason Contreras ("Contreras Decl.") [Dkt. 1-1 at 27] ¶ 25. The shot hit Semko in the back, who

died the next day.  Pet. at 5.  At the time, Petitioner was only fifteen years old.  *Id.* at 14.

On or about October 30, 1996, Petitioner was arrested and charged with capital murder, robbery, and several related offenses.  Pet. at 13-14.  Even though he was a minor, Petitioner was certified and charged as an adult.  *Id.* at 14.  At that time, capital murder still carried a mandatory life sentence in Virginia.  *See Yarbrough v. Commonwealth*, 258 Va. 347, 366-69 (1999).

On March 27, 1997, Petitioner pled guilty to first degree murder along with the aforementioned charges.  Pet. at 4.  Prior to the plea, Contreras's trial attorneys requested that the court appoint a mental health expert to evaluate him.  *Id.* at 15.  One attorney in particular worried that Petitioner was "quite immature" and "was really incapable of making an intelligent decision" because "[he] had no clue what was going on in his case . . . and could not even begin to absorb what was happening to him."  Declaration of Attorney Kim M. Crump ("Crump Decl.") [Dkt. 1-1 at 19] ¶ 10.  His attorneys also noted that they had "a hard time getting information [they] needed from him."  *Id.* ¶ 11.  The trial court denied their request, however.  Pet. at 15.  According to Petitioner, the only reason he ultimately agreed to plead guilty was to avoid the life sentence associated with a capital murder conviction.  *Id.*

On May 20, 1997, following Petitioner's guilty plea, the court sentenced Petitioner to seventy-seven years in prison.  Pet. at

3

4. Because Petitioner is ineligible for parole pursuant to Va. Code § 53.1-165.1, which abolished parole for individuals convicted of a felony committed after January 1, 1995, he will not be eligible for release until 2040. *See* Va. Code § 53.1-40.01 (permitting "Geriatric Release"). Petitioner did not file a direct appeal of his sentence. Pet. at 4. On June 10, 1999, Petitioner filed a *pro se* motion for habeas relief in the Norfolk Circuit Court. *Id.* Following a hearing, the court dismissed his motion. *Id.*

On June 23, 2013, Petitioner filed the instant petition for a federal writ of habeas corpus. [Dkt. 1.] Petitioner argues that his guilty plea is invalid because it was induced by the prosecutor's threat of a now unconstitutional sentence: mandatory life without parole. Petitioner's argument rests upon the recent Supreme Court case *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that mandatory life sentences for juveniles who commit homicide offenses are unconstitutional. Pet. at 3. Applying *Miller* retroactively, petitioner asks the Court to "discharge[] [him] from his unconstitutional confinement and restraint and/or relieve[] [him] from his unconstitutional sentence." *Id.* at 32.

Previously, Respondent moved to dismiss this petition on the grounds that it is time-barred, the claims are unexhausted, and the arguments are without merit. Resp't Br. at 3, 5, 17. This Court granted Respondent's motion and dismissed the petition, finding that *Miller* was not retroactive and, therefore, the petition was untimely.

4

[Dkt. 8.]  Petitioner appealed the Court's ruling to the Fourth Circuit, which affirmed.  [Dkt. 15.]  Petitioner then appealed to the United States Supreme Court, which reversed and remanded the case for further consideration in light of *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).

On December 9, 2016, Petitioner submitted a supplemental pleading in support of his original petition for a writ of habeas corpus.  [Dkt. 22.]  Respondent filed its response on December 19, 2016.  [Dkt. 23.]  Petitioner failed to file a reply.  This petition is now ripe for disposition.

## II.  Analysis

### A.  Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state prisoners have a one-year period within which they must seek federal habeas review.  28 U.S.C. § 2244(d)(1).  Ordinarily, this limitation period begins to run from the date on which the state court judgment becomes final. *See Gonzalez v. Thaler,* 132 S. Ct. 641, 652-53 (2012).  However, in some circumstances, AEPDA expressly permits accrual of the limitations period at a later date. *See* 28 U.S.C. § 2244(d)(1).  As pertinent here, AEDPA allows for a belated commencement of the limitation period when the Supreme Court recognizes a new constitutional right.  In that case, the limitations period runs from the "date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been

5

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

Here, the window for Petitioner to bring a federal challenge to his 1997 conviction expired sometime in 1998 after he opted not to seek direct review. *See Gonzalez*, 132 S. Ct. at 653. Consequently, the current petition, filed in 2013, should be precluded unless Petitioner can demonstrate a belated commencement of the limitations period. *See* 28 U.S.C. §§ 2244(d)(1)(B)-(D).

Petitioner argues that he is entitled to a later accrual date based on the Supreme Court's recent decision, *Miller v. Alabama*. Pet. at 4; Supp. Pleading at 6-7. Though Petitioner fails to make this argument himself, the Supreme Court's remand requires consideration of *Montgomery*, which held that *Miller* announced a substantive rule of law that should be given retroactive effect to cases on collateral review. 136 S. Ct. 718, 734 (2016). Petitioner appears to argue that the new rule set forth in *Miller*, and made retroactive by *Montgomery*, applies to his case, qualifying his petition for a belated commencement under § 2244(d)(1)(C). This Court agrees. Accordingly, the Court finds that the petition for a writ of habeas corpus is timely under § 2244(d)(1)(C).

### B.   State Exhaustion and Procedural Default

Before applying for federal habeas relief, a state prisoner must also exhaust all available state remedies. *Breard v. Pruett*,

134 F.3d 615, 619 (4th Cir. 1998); *see also* 28 U.S.C. § 2254(b). "To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997)). This means that the petitioner must not present "new legal theories or factual claims for the first time in his federal habeas petition," unless he has a valid excuse. *Id.* (citing *Matthews*, 105 F.3d at 911.); *see also* 28 U.S.C. § 2254(b). The petitioner bears the burden of proving exhaustion. *Breard*, 134 F.3d at 619.

In the instant case, Petitioner filed his first and only state habeas petition on June 9, 1999, alleging claims of trial error, ineffective assistance of counsel, and prosecutorial misconduct. Exh. B, State Habeas Pet. [Dkt. 7] at 39, 54-55. He included in those claims allegations about the involuntariness of his guilty plea, which focused on bad advice his attorneys had given him about his possible eligibility for parole. *Id.* at 32-33. Petitioner also included claims about his attorneys' failure to object to the prosecution's decision to reinstate capital murder charges against him prior to his plea. *Id.* at 2-4. Unsurprisingly, he did not mention *Miller* in his state petition, as it had not yet been decided. Nevertheless, Petitioner did mention the impact of his youthfulness on the proceedings, which would become relevant post-*Miller*.[1]

---

[1] It is also notable that Contreras filed his state habeas petition *pro se* several months after turning eighteen years old.

7

Petitioner's request for state habeas relief was ultimately denied. He did not appeal that ruling to the Supreme Court of Virginia.

Respondent concedes that if Petitioner has a "bona-fide *Miller* claim, he might legitimately argue that he had no avenue to exhaust such a claim in state court." Resp. Mem. in Supp. of Mot. to Dismiss [Dkt. 7] ¶ 14. However, Respondent argues that Petitioner's claim is not a true *Miller* claim and is instead "nothing more than an allegation that his plea was coerced by the prosecutor's conduct, a claim which he certainly could have raised" in his state habeas petition, but did not. Resp. Repl. to Supp. Pleading [Dkt. 23] at 9. Because Petitioner did not present this factual predicate to the state court, and because he never appealed the state habeas ruling to the Supreme Court of Virginia, Respondent asserts that he is now barred from raising the claim here. (*Id.*)

Respondent is correct that Petitioner would be barred from raising a challenge to the voluntariness of his plea based solely on prosecutorial misconduct, as his earlier involuntariness claim did not mention threats or coercion by the prosecution. *See* 28 U.S.C. § 2244(b)(2)(B). Such a claim would also be considered procedurally defaulted by Virginia's statute of limitations period and its successive writ rule. *See* Va. Code § 8.01-654(A)(2) (requiring a state habeas petition to be filed within one year after the deadline for filing a direct appeal has expired); Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts

8

of which petitioner had knowledge at the time of filing any previous petition."). Thus, he could not go back to the Commonwealth of Virginia to bring his claim in the first instance. As a result, the only way for this Court to address Petitioner's claim is if he can show "that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" to him. 28 U.S.C. § 2244(b)(2)(A). *Miller*, made retroactive by *Montgomery*, provides such a rule.

        C.    *Miller*'s Application to Petitioner's Guilty Plea and/or 77-Year Sentence

In this Court's prior Memorandum Opinion—issued on December 11, 2013—the Court dismissed Petitioner's federal habeas claim as untimely, due in large part to the Court's belief that *Miller* was not retroactive. [Dkt. 8.] In dicta, the Court also stated that "*Miller* has no bearing on [Petitioner's] case" because *Miller* did not address the legitimacy of a guilty plea entered by a juvenile offender after the threat of a now unconstitutional life without parole sentence. [Dkt. 8 at 5.] Taking into consideration *Miller*'s retroactivity as well as other recent developments in case law, the Court now revisits its earlier decision. For the reasons that follow, the Court finds that *Miller* applies. Thus, the Court grants Petitioner's request for a writ of habeas corpus to correct his unconstitutional sentence.

Despite the passage of three years, the crux of Petitioner's claim remains the same: his guilty plea is flawed

9

because the prosecution threatened to pursue a mandatory life without parole sentence, a punishment that is now unconstitutional.  Pet. at 3.  In support of this argument, Petitioner points out that *Brady v. United States*, 397 U.S. 742 (1970) "places a high degree of faith in the rational knowledgeable defendant, capable of assisting in his own defense, aided by counsel[,] and capable of assessing and weighing the import of possible outcomes" when entering a guilty plea.  Supp. Pleading at 4.  In contrast, Petitioner was an "immature fifteen-year-old with no experience with the criminal justice system" whose attorneys described him as "incapable of making an intelligent decision" on his own.  *Id.* at 5.  Petitioner claims that *Miller* and its antecedents established that "children are different" and, thus, the criminal justice system must treat them differently when considering guilty pleas entered in the shadow of cruel and unusual punishment.  *Id.* (citing *Miller*, 132 S. Ct. at 2469).  Petitioner also asserts that his sentence "falls squarely into the settled premise that his punishment is vastly excessive in relation to his moral culpability."  *Id.* at 6 (citing *Miller*, 132 S. Ct. at 2464; *Graham*, 560 U.S. at 48-50; *Roper*, 543 U.S. at 560).  At its essence, then, Petitioner's claim seeks to have this Court combine *Miller* and its antecedents with *Brady* to craft a new rule that will invalidate his 77-year sentence.

If the Court were to construe *Miller*, *Graham*, and *Roper* in the narrowest light possible, Petitioner would have no plausible

10

claim for relief.  That is because the Supreme Court's holdings focus on specific sentences for juveniles, invalidating mandatory life without parole sentences for homicide offenses, life without parole sentences for non-homicide offenses, and the death penalty, respectively.  *Miller*, 132 S. Ct. at 2469; *Graham*, 560 U.S. at 82; *Roper*, 543 U.S. at 578.  According to this narrow interpretation, if a defendant has been sentenced to anything else—such as a long term-of-years sentence or multiple consecutive sentences—the trilogy provides no avenue for federal habeas relief.  *See, e.g., Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012) (holding that *Graham* was inapplicable because petitioner was sentenced to 89 years for multiple non-homicide offenses, rather than life without parole, even though it was the "functional equivalent"); *cf. Dingle v. Stevenson*, 840 F.3d 171 (4th Cir. 2016) (holding, without considering the unique characteristics of juveniles, that *Roper* did not invalidate a guilty plea entered by a juvenile defendant to avoid the possibility of the death penalty).  Such a narrow interpretation, however, overlooks important principles the Supreme Court directed states to consider when punishing juveniles, most notably the Court's guidance regarding the possibility of parole.

In *Graham*, the Supreme Court made clear that when a state sentences a juvenile to life in prison, "it must provide [that child] with some realistic opportunity to obtain release before the end of that term."  560 U.S. at 81.  Although *Graham* left it up to the

11

states to figure out how to comply with its ruling, *id.* at 75, the decision nevertheless established at least three minimum requirements for parole or early release programs.  First, the opportunity for release must be "based on demonstrated maturity and rehabilitation." *Id.* at 75.  Second, it must be "meaningful," which means the opportunity must be "realistic" and more than a "remote possibility."[2] *Id.* at 70, 75, 82.  Third, the state parole or early release system must take into account the defendant's youthfulness when the crime was committed, a fact that makes him or her less culpable than an adult.  *Id.* at 76.

Several years later, *Miller* expanded upon *Graham*'s principles, allowing a state to impose life without parole for a juvenile convicted of a homicide offense only after taking into consideration the offender's age and age-related characteristics. 132 S. Ct. at 2475.  Although *Miller* technically permitted such sentences, it also made clear that "sentencing juveniles to this harshest possible penalty [should] be uncommon."  *Id.* at 2469.

Since *Graham* and *Miller* were decided, several courts have applied these principles more broadly to invalidate lengthy term-of-years sentences for juveniles.  *See, e.g., Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013) (invalidating a 254 year sentence as "materially indistinguishable" from a life sentence without parole since the

---

[2] Importantly, the Supreme Court pointed out that executive clemency is not "meaningful" due to its ad hoc nature.  *Id.* at 69-70.

12

juvenile offender would not be eligible for parole during his natural lifetime); *cf. LeBlanc v. Mathena*, 841 F.3d 256 (4th Cir. 2016) (holding that Virginia's Geriatric Release program does not comply with the requirements of *Graham* as it does not provide a "meaningful" opportunity for release for juvenile offenders).  Essentially, courts have viewed such sentences as *de facto* life sentences.  These sentences, while technically in compliance with the mandates of *Miller* and *Graham*, still subject juveniles to life behind bars, with "no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope."  *Graham*, 560 U.S. at 79.  Thus, courts have treated them as every bit as cruel and unusual as life without parole itself.  Given the status of Virginia's current early release program, this Court is inclined to agree.

In *LeBlanc v. Mathena*, the Fourth Circuit recently held that Virginia's Geriatric Release program fails to meet the basic dictates of *Graham* for juvenile offenders sentenced to life in prison.  841 F.3d at 274.  The Fourth Circuit reasoned that Geriatric Release does not provide juveniles with the opportunity to obtain release "based on demonstrated maturity and rehabilitation," as required by *Graham*, because the Parole Board has the authority to deny release "for any reason whatsoever."  *Id.* at 268-69.  Moreover, data provided by the Virginia Criminal Sentencing Commission revealed that Geriatric Release petitions are denied "in nearly every case" based solely on the "heinousness or depravity of the offender's

13

crime," a consideration that directly contradicts *Graham*. *Id.* at 270. In addition, the Court found that Geriatric Release does not provide a "meaningful" opportunity for release to juveniles because, under the program, release is the exception rather than the rule. *Id.* at 271. Moreover, there are no standards by which to govern the denial of release petitions. *Id.* Finally, the Fourth Circuit concluded that Geriatric Release did not require the Parole Board to consider the "special mitigating force of youth," thereby allowing the Board to ignore juvenile offenders' lesser culpability and subject them to harsher punishments than adults by requiring them to serve a larger percentage of their sentences. *Id.* at 272.

In the instant case, Petitioner received a sentence of seventy-seven years. Due to Virginia's elimination of parole in the 1990s, Petitioner will not be eligible for early release until he turns sixty years old. *See* Va. Code § 53.1-165.1 (eliminating parole for offenses committed after January 1, 1995); *see also* Va. Code § 53.1-40.1 (providing for "Geriatric Release"). By that time, he will have spent 45 years behind bars. And, as noted by the Fourth Circuit in *LeBlanc*, there is no guarantee that his petition for early release will ever be granted.

This Court is troubled by the practical realities of Petitioner's case, as Virginia has imposed a lengthy term-of-years sentence with no realistic possibility for early release. In effect, Virginia has relegated Petitioner to a *de facto* life sentence for

14

crimes he committed when he was only fifteen years old.  For that reason, the Court is sufficiently convinced that Petitioner's sentence is irreconcilable with the mandates of *Graham* and *Miller*.  Thus, the Court will grant his petition for a writ of habeas corpus and remand to the state court for re-sentencing in accordance with the Eighth Amendment.

Even assuming, *arguendo*, that Petitioner's sentence is constitutional, the Court remains concerned with the validity of Petitioner's guilty plea.  Petitioner claims that the only reason he pled guilty was to avoid the imposition of a mandatory life without parole sentence, a punishment that has since been struck down as cruel and unusual.  Supp. Pleading at 4.  Petitioner argues that the standard set forth in *Brady v. United States*, 397 U.S. 742 (1970) to assess the validity of a guilty plea is inadequate in this case because it fails to address how facing a definite unconstitutional punishment as the result of going to trial may coerce a juvenile defendant into pleading guilty.  *Id*.  While Petitioner concedes that *Brady* should be applied to his case, he nevertheless urges the Court to consider it within the context of the "constitutional logic" of *Miller*, *Graham*, and *Roper*.  *Id.*

In *Brady v. United States*, the petitioner challenged the voluntariness of his guilty plea, arguing that it was coerced by a now-unconstitutional criminal statute.  397 U.S. at 746 (citing *United States v. Jackson*, 390 U.S. 570 (1968)).  Brady had been

15

charged with kidnapping under 18 U.S.C. § 1201(a), which authorized the death penalty only upon a jury's recommendation.  *Id.* at 743.  Nearly ten years later, the Supreme Court invalidated this provision, arguing that it discouraged the assertion of defendants' constitutional rights to plead not guilty and to demand a jury trial.  *Jackson*, 390 U.S. at 572, 583.  Because fear of the death penalty had been at least one factor in Brady's decision to plead guilty, he argued that *Jackson* invalidated his plea.  *Brady*, 397 U.S. at 746.  The Supreme Court disagreed.

*Brady* first concluded that Petitioner's plea had been voluntary.  The Court began by clarifying that *Jackson* did not hold that "every defendant who enters a guilty plea to a charge under the Act [automatically] does so involuntarily."  397 U.S. at 747 (citing *Jackson*, 390 U.S. at 583) (internal quotations omitted).  It then proceeded to examine the circumstances surrounding Brady's plea, looking for evidence that the defendant was "fully aware of the direct consequences" of his plea and entered it without facing threats, misrepresentation, or bribes.  *Id.* at 755.  In its analysis, the Court placed great weight on the fact that Brady had decided to plead guilty after his co-defendant confessed and agreed to testify against him.  *Id.* at 749.  Furthermore, although the Court acknowledged the possibility that facing the death penalty may have influenced Brady's decision, the Court reasoned that it was only one of several factors to consider.  *Id.*  The Court also considered other

16

factors, finding no evidence that Brady pled guilty due to "actual or threatened physical harm or mental coercion," that he had competent counsel and was able to "rationally weigh the advantages of going to trial against [those] of pleading guilty," and that his plea was entered in open court before a trial judge who twice questioned its voluntariness. *Id.* at 743, 750, 754-55.  In other words, Brady's decision to plead guilty was his own.

In addition, the *Brady* Court concluded that Petitioner's plea was intelligently made.  The Court found no evidence that Brady was "incompetent or otherwise not in control of his mental faculties" at the time he entered a guilty plea.  397 U.S. at 756.  The Court went on to explain that "absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757.  Or, to put it more simply, "[t]he fact that Brady did not anticipate *United States v. Jackson* . . . does not impugn the truth or reliability of his plea." *Id.*

Starting with *Roper* and continuing with *Graham* and *Miller*, however, the Supreme Court outlined several critical differences between juvenile and adult offenders that are relevant to the *Brady* analysis.  In its trilogy, the Court noted that "juveniles have a lack of maturity and an underdeveloped sense of responsibility; they

17

are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed." *Graham*, 560 U.S. at 68 (citing *Roper*, 543 U.S. at 569-70, 573) (internal quotations omitted). In addition, the Court pointed out that juveniles have a proclivity towards risky behavior and an inability to assess consequences. *Miller*, 132 S. Ct. at 2464-65. As a result, juveniles' conduct should be viewed as less culpable and their character as more capable of reform. *Id.* at 2464. The Court took great care to point out that "none of what it said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific." *Id.* at 2465. Nor should it be. The same juvenile characteristics that are relevant at sentencing pervade every aspect of a criminal case, including guilty pleas. Consequently, when the criminal justice system deals with children, the "constitutional logic" of *Miller*, *Graham*, and *Roper* should apply.

In the instant case, this Court must examine all of the relevant circumstances surrounding Petitioner's guilty plea, including his age at the time his plea was entered. *Brady*, 397 U.S. at 749; *see also Graham*, 560 U.S. at 76 ("An offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed."). Petitioner alleges that his guilty plea was entered solely to avoid a mandatory life without parole sentence. Supp.

18

Pleading at 4. This fact is confirmed by Contreras's trial attorney. Crump Decl. ¶ 15. Additionally, at the time of his guilty plea, Petitioner, who was only fifteen years old, demonstrated all of the inherent characteristics of youth. Supp. Pleading at 5. For example, although Petitioner had been forced to provide for himself amidst a tumultuous upbringing, he remained "quite immature." Crump Decl. ¶¶ 10-11. Once abandoned by his drug-addicted mother to the supervision of drug dealers, Petitioner followed their negative lead, committing crimes at the drug dealers' request. Even after he was arrested and charged, Petitioner seemed incapable of grasping the consequences of his actions. His trial attorneys describe him as unable to absorb what was happening to him, in need of a mental health evaluation, and unable to assist in his own defense. *Id.*; Pet. at 15.

Having considered the circumstances surrounding Petitioner's guilty plea, the Court is left with grave concerns that his plea was entered "with full awareness of its consequences." *See Brady*, 397 U.S. at 755. Moreover, Petitioner's desire to avoid a cruel and unusual punishment, coupled with his potential mental health issues, suggest that his plea was not voluntary and intelligently made. Certainly, a later judicial decision invalidating the punishment Contreras faced would not be enough on its own to attack his guilty plea today. *See Brady*, 397 U.S. at 757.

But *Miller* and its antecedents, in combination with the circumstances surrounding Petitioner's decision to plead guilty, would be.

Accordingly, as stated above, the Court will grant Contreras's petition for a writ of habeas corpus and remand to the state court for re-sentencing in accordance with the Eighth Amendment.

### III.  Conclusion

For the foregoing reasons, the petition will be granted. An appropriate Order shall issue.

|  |  |
|---|---|
| | /s/ |
| January 26, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |